IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHANCE WILLIAM ANDREWS,

                Petitioner,

   v.

SCOTT ECKSTEIN,

                Respondent.

OPINION & ORDER

17-cv-818-jdp

---

Pro se petitioner Chance William Andrews seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges the sentence he received from the Douglas County Circuit Court in cases numbered 2014-CF-358, 2015-CF-56, 2015-CF-107, and 2015-CF-156. Andrews's petition is now fully briefed and ready for a decision.

After considering the parties' submissions, I conclude that Andrews has failed to show that the Wisconsin Court of Appeals unreasonably applied federal law regarding due process or ineffective assistance of counsel. I will deny his habeas petition.

FACTS

The court draws the following facts from the petition, briefs, and state court records.

In October 2014, Andrews was charged with felony murder in Douglas County Case No. 2014-CF-358. The charges were later amended to include attempted armed robbery. In February 2015, Andrews was charged with battery by a prisoner in Douglas County Case No. 2015-CF-56. In March 2015, Andrews was charged with battery by a prisoner in Douglas County Case No. 2015-CF-107. And in May 2015, Andrews was charged with misdemeanor theft and threat to injure in Douglas County Case No. 2015-CF-156.

Kenneth Kratz was appointed to represent Andrews in each of these four criminal cases. In June 2015, Kratz negotiated a plea agreement with the district attorney, Daniel Blank. Under the terms of the plea agreement, Blank would dismiss the attempted armed robbery charge in the '358 case; Andrews would plead guilty to felony murder in the '358 case; Blank would dismiss the battery charge in the '056 case and the misdemeanor theft charge in the '156 case; Andrews would plead guilty or no contest to the battery charge in the '107 case and the threat-to-injure charge in the '156 case; and Blank would recommend a sentence of 17½ years of initial confinement followed by the maximum term of extended supervision for the felony murder charge and concurrent sentences for the battery and threat-to-injure charges. Blank also offered to decrease the recommended sentence by one year if Andrews helped law enforcement locate the gun used in the felony murder and by another year if Andrews testified against his codefendants. *See* Dkt. 9-9. Andrews accepted Blank's offer and provided information used to locate the gun, but he didn't testify against his co-defendants.

The sentencing hearing for all three remaining cases (the '056 case having been dismissed) was held on September 17, 2015, before Douglas County Circuit Court Judge George Glonek. Blank began by noting that Andrews "took responsibility and saved the victim's family and the community the time and expense of a trial," but that he refused to testify against his codefendants and only helped "to get the murder weapon off the streets after receiving a plea bargain." Dkt. 9-11, at 5:1–10. He discussed Andrews's lengthy juvenile record and the evidence presented at the trial of one of the codefendants. And he mentioned two of the "numerous, numerous, numerous jail violations and infractions since he's been incarcerated on this case." *Id.* at 10:24–25. Then, the victims' parents spoke. They asked the judge to "reject the deal" and sentence Andrews "to the maximum penalty allowed by law." *Id.* at 15:15–20.

Blank then resumed, highlighting some of Andrews's comments and the risk assessment section in the presentence investigation report and presenting photos of the victim and of Andrews. Finally, Blank recommended 16½ years of initial confinement followed by the maximum term of extended supervision for the felony murder charge; three years of confinement followed by 18 months of extended supervision for the battery charge; and three years of confinement followed by 18 months of extended supervision for the threat-to-injure charge. Blank explained, "The State's agreed to recommend" that the sentences for the battery and threat-to-injure charges run concurrent with the sentence felony murder charge. *Id.* at 25:4.

Then Kratz spoke on Andrews's behalf. Kratz explained that the "agreement" was "negotiated" with Blank and that Blank's "side of the bargain" was the recommendation of 16½ years of initial confinement. *Id.* at 27:9–21. After explaining Andrews's side of the story regarding his juvenile record and the events underlying the felony murder charge, Kratz went back to the sentence recommended by Blank, and the following exchange, which is at the heart of Andrews's claims, took place:

> Kratz: I'm going to argue what he is entitled to is this Court's recognition that Mr. Andrews and his counsel has engaged in a negotiated resolution of this case, which again has been reached with I think a very thoughtful disposition that's being jointly recommended. Mr. Andrews is entitled to the benefit of those negotiations, the benefit of that bargain. . . . . Mr. Andrews should be afforded the affirmation of this Court affirming the negotiation of two very experienced attorneys, having very, very different outcomes in mind, but we came to a resolution. 16-and-one-half years is not insignificant. I understand that nothing can bring back the victim in this case, but for a first felony, a first criminal violation, 16-and-one-half years of initial confinement, which is a joint recommendation, is significant.
>
> Blank: Excuse me, Your Honor. I just want to make it clear that from the State's perspective, it's not a joint

<blockquote>
recommendation. The Defense may choose to join the State's recommendation, but the State's having no part of colluding with the Defense on the recommendation.

Glonek: Okay. Well, you've made your recommendation. Apparently, you're joining in the recommendation. So go ahead.

Kratz: Right. So since we're making the same recommendation for 16-and-a-half years of initial confinement, followed by two other prison sentences that are jointly recommended to be concurrent in this case, we are asking the Court to affirm that disposition in this case and enter that particular disposition.
</blockquote>

*Id.* at 31:8–33:5. Then, Andrews made a statement.

Judge Glonek then discussed the evidence presented and, just before announcing the sentence, said,

<blockquote>
I would just note that—and it's been—it's been discussed and certainly plea negotiations are part of the system, but it's not my job as an elected official to sit up here and merely rubber stamp negotiated resolutions. That's—that's not my job.
</blockquote>

*Id.* at 40:15–19. He then sentenced Andrews to 20 years of initial confinement and 10 years of extended supervision in the '358 case; three years of initial confinement and three years of extended supervision in the '156 case; and two years of initial confinement and two years of extended supervision in the '107 case. He ordered each sentence to be served consecutive to the others. Thus, Andrews was sentenced to a total of 25 years of incarceration followed by 15 years of extended supervision. Judge Glonek noted that these sentences were "within the parameters of the recommendations of the Department of Corrections." *Id.* at 42:12–13.

After Andrews's sentencing, Sarah Harless was appointed to represent him as he pursued postconviction relief. On May 2, 2016, Judge Glonek held a hearing on Andrews's motion for postconviction relief. At the hearing, Harless argued that the risk assessment section

4

of the presentence investigation report contained inaccurate information, that Blank breached the plea agreement by objecting to the characterization of the sentencing recommendation as joint and by suggesting that the maximum sentence would be appropriate, and that Kratz performed deficiently by failing to object to Blank's breach of the plea agreement. Judge Glonek denied Andrews's motion from the bench. *See* Dkt. 9-12.

Andrews appealed, again raising Blank's breach of the plea agreement and Kratz's failure to object. The Wisconsin Court of Appeals affirmed the trial court's decision, holding that Blank did not materially breach the plea agreement, because his "statements were necessary to justify his recommended sentence," he didn't adopt the victim's parents' request for the maximum sentence, and his objection to the characterization of the sentencing recommendation as joint didn't suggest that he wanted to withdraw from the recommendation. Dkt. 9-5, at 4. As a result, Kratz's failure to object to Blank's statements was not deficient performance.

The Wisconsin Supreme Court denied Andrews's petition for review. Andrews now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

ANALYSIS

Andrews contends that he is entitled to habeas relief because the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent. Section 2254(d) allows courts to grant state prisoners' petitions for habeas corpus when the state court's adjudication of the merits of a claim for relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." But before reviewing Andrews's

claims on the merits under § 2254(d), I must address any potential procedural grounds barring review.

Respondent contends that Andrews may not raise his claim that the risk assessment section of the presentence investigation report contained inaccurate information because he did not present that claim to the Wisconsin Court of Appeals. I didn't read Andrews's petition as raising this claim, but even if it did, I agree with respondent that he cannot raise it now. Habeas petitioners are required to exhaust all available remedies in state court before seeking relief in federal court. § 2254(b)(1)(A); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Andrews did not exhaust state court remedies for his inaccurate-information claim because he didn't provide the Wisconsin Court of Appeals or the Wisconsin Supreme Court the opportunity to review that claim. So I will not consider that claim further.

I now turn to the merits of the claims for which Andrews did exhaust his available state-court remedies. Andrews claims that Blank's comments at the sentencing hearing violated his due process rights and that Kratz's failure to object to those comments violated Andrews's right to the effective assistance of counsel. He contends that the state courts unreasonably applied Supreme Court precedent concerning ineffective assistance of counsel and due process violations. The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court opinions "but unreasonably applie[d] it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The relevant decision in this case is the Wisconsin Court of Appeals' opinion affirming the trial court's denial of his motion for postconviction relief. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("The relevant state court decision is that of the last state court to address the claim on the merits.").

6

The "unreasonable application" standard places a high burden on Andrews. *Metrish v. Lancaster,* 133 S. Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Andrews contends that Blank's actions at the sentencing hearing breached the plea agreement. The Wisconsin Court of Appeals identified the standard for reviewing an alleged breach of a plea agreement. Dkt. 9-5, at 3–4. Under the Due Process Clause, the prosecutor must follow through on any substantial and material promises, whether explicit or implicit, made to the defendant in exchange for his guilty plea. *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971). A prosecutor "is not permitted to pull the rug out from under a defendant who has negotiated a plea agreement, by taking steps to induce the judge to give a higher sentence." *Campbell*, 770 F.3d at 548 (quoting *United States v. Hauptman*, 111 F.3d 48, 51 (7th Cir. 1997)). But "a prosecutor may without breaching a plea agreement present the aggravating sentencing factors to argue that the recommended sentence is appropriate." *Id.* The prosecutor is not required to enthusiastically endorse an agreed-upon sentencing recommendation. *Id.* My task is not to independently apply the due process analysis to the facts of Andrews's case. Instead, I must determine whether the

7

Wisconsin Court of Appeals reasonably applied controlling federal law when it concluded that Blank did not breach the plea agreement.

Andrews contends that Blank breached the plea agreement by undermining the sentencing recommendation in four ways: (1) by presenting all negative information about Andrews; (2) by implicitly adopting the victims' sentencing recommendations by inserting them into the middle of Blank's presentation; (3) by objecting to Kratz's characterization of the sentencing recommendation as joint; and (4) by insinuating that the plea deal was reached only to get Andrews to give up the location of the murder weapon.

As the Wisconsin Court of Appeals explained, Blank's presentation of negative information did not breach the plea agreement; rather, it addressed the pertinent sentencing factors that the trial court had to consider: the gravity of the offense, Andrews's character, and the need for protection of the public. *See id.* I agree, although I wouldn't go so far as to say that each of Blank's statements was necessary to support the recommended sentence. But on the whole, Blank presented aggravating sentencing factors to support the recommended sentence; there's no indication that he was actually trying to get the judge to give Andrews a higher sentence. As for the victims' recommendations, the victims have a right to speak at the sentencing, and Blank didn't explicitly adopt their recommendation. The mere fact that the victims' comments came "in the middle of the prosecutor's sentencing argument" didn't imply that Blank was adopting or approving their recommendation. Dkt. 9-5, at 4. Nor did Blank's objection to the characterization of the sentencing recommendation undermine it, because the plea agreement didn't provide for a joint recommendation—it required Blank to recommend a particular sentence, but Andrews was free to argue for whatever sentence he wanted. The appeals court's due process analysis was reasonable.

The appeals court didn't directly address the comment about finding the murder weapon, but that comment did not undermine the sentencing recommendation, either; instead, it accurately reflected that Andrews did not help law enforcement find the gun until after the plea deal had been negotiated. Blank followed through with his end of the bargain: he recommended 16½ years of initial confinement and he did not back away from that requirement; the plea agreement did not require him to enthusiastically endorse that recommendation. Blank did not breach the plea agreement.

I also agree with the appeals court's conclusion that without a breach of the plea agreement, Andrews cannot establish ineffective assistance of counsel. For "if there was no breach, or if any breach was not material and substantial, defense counsel's failure to object was not ineffective assistance." *Campbell*, 770 F.3d at 547. So I will deny Andrews's habeas petition.

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Andrews has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the

Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Andrews a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Chance William Andrews's petition for habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. Petitioner's request for a certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered August 14, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge